UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEATHER MILLS,

       Plaintiff,

                                                      Case Number 11-13148-BC
v.                                        Honorable Thomas L. Ludington

UNITED PRODUCERS, INC.,

       Defendant.

_____ /

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS AND
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE**

This case arises from the conclusion of Plaintiff Heather Mills' employment relationship with Defendant United Producers.  Trial is scheduled to begin Tuesday, September 25, 2012. The two questions now before the Court both concern a consent decision entered in 2007 and endorsed by Defendant's CEO, which ordered Defendant to pay a $96,000 civil penalty for violating the Packers and Stockyards Act, 7 U.S.C. § 181 et seq.

The first question is what sanctions, if any, should be imposed on Defendant for denying the consent decision's existence.  In Defendant's answer to Plaintiff's amended complaint, Defendant denied that the consent decision was entered, that it was endorsed by Defendant's CEO, and that it imposed a $96,000 civil penalty.  Plaintiff moves to sanction Defendant for this conduct. Because Defendant's denials of these historical facts are unreasonable, monetary sanctions are appropriate.  Yet the conduct did not infect the entire pleading, much less the entire litigation.  As the sanction should be proportional to the misconduct, the Court will impose a

sanction of $3,000.  To enhance the deterrent effect, the penalty will be ordered to be paid to Plaintiff.

The second question is whether to preclude Plaintiff from introducing evidence of the consent decision at trial.  Defendant has filed a motion in limine, asserting that the decision is irrelevant and unfairly prejudicial.  Defendant is correct that admitting the decision risks unfairly prejudicing the jury against Defendant.  But it could also prove highly relevant, depending on the other evidence introduced at trial.  Accordingly,  the Court will grant the motion in limine in part, prohibiting Plaintiff from introducing the consent decision in Plaintiff's case-in-chief, but reserving judgment on whether the decision may be admissible for other purposes.

## I

A fuller description of the facts of the case can be found in the Court's opinion and order granting and part and denying in part Defendant's motion for summary judgment.  The facts set forth below are focused on the pending motions.

## A

Defendant is a middleman in the livestock industry.  In 1999, Defendant's predecessor, Producers Livestock Association, merged with another Midwestern farm cooperative, MFA Livestock Association.  *See* Def.'s Resp. to Pl.'s Mot. for Sanctions Ex. 1, at 2.  Following the merger, Producers Livestock Association changed its name to United Producers Inc. (the defendant in this case).  *Id*.

At the time of the merger, MFA Livestock Association owned a 75 percent interest in MFA Livestock Services, LLC.  *Id*. at 3.  The remaining 25 percent interest in the LLC was owned by Professional Business Services, Inc., which served as the managing member.  *Id*.

Professional Business Services, in turn, was jointly owned by George Young and Kathleen McConnell. *Id.*

Following the merger, Defendant took ownership of MFA Livestock Association's 75 percent interest in the LLC. *Id.* Defendant then changed the LLC's name from MFA Livestock Services, LLC, to United Livestock Services, LLC. *Id.*

In 2001, Professional Business Services ceased operating United Livestock Services, LLC. Mr. Young, Ms. McConnell, and Professional Business Services filed Chapter 7 bankruptcy petitions in the Bankruptcy Court for the Western District of Missouri. *Id.* at 3–4.

About this time, Mr. Young and Ms. McConnell were indicted for fraud, pled guilty, and were incarcerated in federal prison. *Id.* at 4. A number of suits were filed against Defendant alleging breach of contract, fraud, conversion and Packers and Stockyards Act violations regarding cattle marketing. *Id.* at 4–9. In one case, decided in 2005, the plaintiffs were awarded $17 in damages. *Id.* at 5–7.

On April 1, 2005, Defendant filed for Chapter 11 bankruptcy relief. *See In re United Producers*, 526 F.3d 942, 944 (6th Cir. 2008). The bankruptcy court affirmed the plan.[1]

**B**

On April 7, 2006, Plaintiff began working as the office manager of Defendant's facility in St. Louis, Michigan.

**C**

In 2007, the United States Department of Agriculture filed a complaint against Defendant with the Secretary of Agriculture alleging that Defendant had violated the Packers and

---

[1] As an aside, it is noted that the creditors appealed this decision. Ultimately, the Sixth Circuit dismissed the appeal as equitably moot, explaining: "All three factors of the equitable mootness inquiry weigh in favor of dismissing Creditors' appeal as moot: Creditors did not seek a stay; the confirmed plan has been substantially consummated, and reversal of the plan would adversely impact third parties not before this court and the success of the plan." *Id.* at 951–52.

Stockyards Act, 7 U.S.C. § 181 et seq.  *See* Pl.'s Mot for Sanctions Ex. D.  On June 1, 2007, a

consent decision was entered.  *Id*.  In pertinent part, it provides:

> [Defendant] admits the jurisdictional allegations in paragraph I of the Complaint
> and specifically admits that the Secretary has jurisdiction in this matter; neither
> admits nor denies the remaining allegations; waives oral hearing and further
> procedure; and consents and agrees, for purposes of setting this proceeding and
> for such purpose only, to the entry of this Decision. . . .

> Order

> [Defendant], its agents and employees, directly or through any corporate or other
> device, shall cease and desist from creating false or misleading records in
> connection with [Defendant's] activities subject to the Packers and Stockyards
> Act.  In accordance with section 401 of the Act (7 U.S.C. § 221), [Defendant]
> shall keep accounts, records and memoranda, which fully and correctly disclose
> all of the transactions involved in its business as a livestock dealer and market
> agency, including, but not limited to, true and correct copies of invoices and
> supporting records pertaining to all cattle purchases, sales and financing
> arrangements.

> In accordance with section 312(b) of the Act (7 U.S.C. § 213(b)), [Defendant] is
> hereby assessed a civil penalty of ninety-six thousand dollars ($96,000).

*Id*. at 1, 2–3.  Defendant's CEO, Dennis Bolling, signed the consent order.  *Id*. at 3.  (Mr. Bolling

remains Defendant's CEO.)

## D

Defendant's business model is straightforward, so far as the allegations in this case are

concerned.  Farmers deliver their cattle to Defendant.  It inspects the cattle and sorts them into

three categories.  Healthy cows are accepted.  Unhealthy cows are not.  Cows of questionable

health are conditionally accepted.  Defendant promptly pays farmers for the healthy cows, but

withholds payment for the cows of questionable health.  Defendant then delivers the cows to the

slaughterhouse, where a U.S. Department of Agriculture veterinarian inspects each cow.  If the

cow is deemed fit for human consumption, the slaughterhouse pays Defendant.  If the cow is

condemned, the slaughterhouse does not. Defendant, in turn, then pays the farmer for the conditionally accepted cows that have passed inspection.

In 2009, Plaintiff discovered that one of Defendant's managers, Scott Acker, was altering the condemnation slips that he received from the government inspector before giving them to Plaintiff to mail to the farmers. When a cow that Defendant had unconditionally accepted as healthy was condemned by the U.S.D.A., Mr. Acker would white out its tag number on the condemnation slip. In its place, he would insert the tag number of conditionally accepted cow that had passed inspection, misrepresenting that the conditionally accepted cow had been condemned. When Plaintiff learned of this conduct, she reported it to her supervisors. Colloquially, she blew the whistle. Defendant responded, Plaintiff alleges, by terminating her employment. This case ensued.

## E

In July 2011, Plaintiff brought suit in this Court. ECF No. 1. In March 2012, Plaintiff sought leave to file an amended complaint. ECF No. 15. The motion was granted. ECF No. 19.

In April 2012, Defendant moved to strike allegations in the amended complaint regarding the consent judgment that Defendant entered into with the United States Department of Agriculture. ECF No. 21. Defendant asserted that "the Federal Rules of Evidence [specifically, Rules 408 and 410] strictly prohibit any evidence of this nature from being interjected into a case." Def.'s Mot. to Strike ¶ 6. The motion was denied for reasons detailed in the Court's order. ECF No. 25. Briefly, the Court explained that in *United States v. Cohen*, 946 F.2d 430 (6th Cir. 1991), the Sixth Circuit expressly held consent judgments are admissible. Obligated to follow this precedent, the Court thus concluded that the Federal Rules of Evidence do not "strictly prohibit any evidence of this nature from being interjected into a case." Def.'s Mot. to

Strike ¶ 6.  The Court cautioned, however, that this conclusion should not be taken to suggest that evidence regarding the consent judgment will ultimately be found admissible should this case go to trial.  Like all evidence, to be admissible the evidence must be relevant — "it must make a fact more or less probable than it would be without the evidence" and that fact must be "of consequence in determining the action."  Fed. R. Evid. 401(a), (b).

Discovery closed in May 2012.  In June 2012, Defendant moved for summary judgment on the three counts in the amended complaint and, alternatively, for partial summary judgment on damages.  ECF No. 30.  The motion was granted in part and denied in part.  ECF No. 85.

On August 1, 2012, Plaintiff filed a motion for sanctions against Defendant pursuant to Federal Rule of Civil Procedure 11, asserting that Defendant made a number of factual misstatements regarding the consent judgment.  ECF No. 49.  Two weeks later, Defendant filed a motion in limine to preclude Plaintiff from introducing any evidence at trial regarding the consent judgment.  ECF No. 50.  Both matters are currently scheduled for a hearing at the same time as the final pretrial conference in this case — on Monday, September 10, 2012.

## II

### A

Rule 11 provides that when an attorney submits a pleading to a federal court, the attorney certifies to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).   In evaluating whether to impose sanctions, the Advisory

Committee Notes provide the following factors for a court to consider:

> Whether the improper conduct was willful, or negligent; whether it was part of a
> pattern of activity, or an isolated event; whether it infected the entire pleading, or
> only one particular count or defense; whether the person has engaged in similar
> conduct in other litigation; whether it was intended to injure; what effect it had on
> the litigation process in time or expense; whether the responsible person is trained
> in the law; what amount, given the financial resources of the responsible person,
> is needed to deter that person from repetition in the same case; what amount is
> needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 advisory committee notes (1993 amend.); *see generally* 5A Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1336.1 (3d ed. 2004).

In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions [is] 'whether the

individual's conduct was reasonable under the circumstances.' " *Union Planters Bank v. L & J*

*Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115,

118 (6th Cir. 1989)).   The standard is objective.   *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959

(6th Cir. 1990) (citing *INYST Fin. Group, Inc. v. Chem. Nuclear Sys.*, 815 F.2d 391, 401 (6th

Cir.1987)).

In this case, Plaintiff moves to sanction Defendant for "representations to the Court . . .

that have no evidentiary support."  Pl.'s Mot ¶ 4.  First, Plaintiff contends that twelve paragraphs

of Defendant's answer regarding the consent decision — specifically, paragraphs eight through

nineteen — include "denials of factual contentions which were not warranted by the evidence at

the time submitted."  *Id. ¶* 5; *see* Pl.'s Mot Ex. B (reproducing the responses).  For each of these

paragraphs (except paragraph eighteen, as discussed below), Defendant responded: "Defendant

denies this allegation as untrue, solely for purposes of a response; however, by way of further

answer, states that it has filed a motion to strike this and other allegations as being impermissible under FRCP 12(f)."  Am. Answer ¶¶ 8–17, 19, ECF No. 22.

Additionally, Plaintiff moves to sanction Defendant for its answers regarding Plaintiff's complaints to management (specifically, Defendant's responses to paragraphs 32 and 43 of the amended complaint).  Pl.'s Mot. ¶ 13.  For both of these paragraphs, Defendant responded that the allegation was "denied for the reason it is untrue."  Am. Answer ¶¶ 32, 43.

Each of the fourteen specific paragraphs identified by Plaintiff are discussed in turn.

**1**

Paragraph eight of the amended complaint alleges: "That in 2005 the Federal Bureau of Investigation and the Grain Inspection, Packers & Stockyards Administration began investigating Defendant's involvement in the 'Phantom Cattle Scheme,' one of the largest cattle fraud cases in United States history."  Am. Compl. ¶ 8.

Although these allegations may in fact be correct, Plaintiff has not offered evidence to support them.  For example, while it is possible that the FBI and the Packers & Stockyards Administration began investigating Defendant in 2005, Plaintiff does not offer evidence of this. Likewise, Plaintiff does not offer evidence that either of these entities "began investigating Defendant's involvement the 'Phantom Cattle Scheme.'"  And Plaintiff does not offer evidence that this scheme was "one of the largest cattle fraud cases in United States history."

Consequently, Defendant will not be sanctioned for its denial of these allegations.

**2**

Paragraph nine alleges: "That the investigation focused on Producers Credit Corporation, a division of Defendants, and its involvement with George Young, and Kathleen McConnell." Am. Compl. ¶ 8.

Again, Plaintiff has not offered evidence to support this allegation.  It is possible, of course, that the FBI and the Packers & Stockyards Administration focused their investigation on Producers Credit Corporation (rather than the two people that they ultimately prosecuted, Mr.Young and Ms. McConnell).  But Plaintiff has not established this.

Defendant will not be sanctioned for its denial of these allegations.

### 3

Paragraph ten alleges: "That in 1997, Producers Credit Corporation partnered with George Young to form the United Livestock Service."  Am. Compl. ¶ 10.

Once again, Plaintiff does not offer evidence to support the allegations of this paragraph.  Defendant, in contrast, offers a bankruptcy court filing suggesting that several of the paragraph's allegations are incorrect.  *See* Def.'s Resp. Ex. 1.  First, Mr. Young did not form a business entity with Producers Credit Corporation, but Producers Livestock Association.  Second, the business entity's name was not United Livestock Service, but MFA Livestock Services, LLC (the name was not changed to United Livestock Service, LLC until 1999).  And third, the business entity was not a partnership, but a limited liability company.

Defendant will not be sanctioned for its denial of these allegations.

### 4

Paragraph eleven alleges: "That United Livestock Service sought business from Defendant's customers, purchasing cattle on customers' behalf, promising that it would raise the cattle and sell the same for profit."  Am. Compl. ¶ 11.

Plaintiff again offers no evidence to support the contentions of this paragraph.  Again, although plausible, Plaintiff has not established these allegations.

Defendant will not be sanctioned for its denial of these allegations.

**5**

Paragraph twelve alleges: "That George Young and Kathleen McConnell were implicated in and criminal [sic] charged with violations arising out of a Ponzi scheme, where Mr. Young and Ms. McConnell falsified records to make it appear as if they had purchased cattle and sold the same, where in actuality they were using customers' investments to pay off earlier investors, cover cash shortfalls, and business expenses." Am. Compl. ¶ 12.

Plaintiff is correct that criminal charges were brought against Mr. Young and Ms. McConnell. And Plaintiff could be correct that Mr. Young and Ms. McConnell engaged in a Ponzi scheme as Plaintiff describes — but Plaintiff offers no evidence of this. Likewise, Plaintiff offers no evidence that their scheme operated in the manner alleged in this paragraph.

Defendant will not be sanctioned for its denial of these allegations.

**6**

Paragraph thirteen alleges: "That the falsified records indicated that United Livestock Service had 344,000 head of cattle, when fewer than 17,000 head of cattle actually existed." Am. Compl. ¶ 13.

Plaintiff offers no evidence to support the allegations of this paragraph. Defendant will not be sanctioned for its denial of these allegations.

**7**

Paragraph fourteen alleges: "That on the basis of the above investigation and evidence of Defendant's involvement in the Ponzi scheme, in 2007, the Deputy Administrator of the Packers and Stockyards Program, United States Department of Agriculture, filed a complaint against Defendant pursuant to the Packers and Stockyards Act, 7 U.S.C. § 181 et seq., alleging that through the falsification of records, Defendant willfully violated the Act." Am. Compl. ¶ 14.

Although there is evidence that in 2007 the Department of Agriculture "filed a complaint against Defendant pursuant to the Packers and Stockyards Act," Plaintiff presents no evidence that the department did so "on the basis of the [alleged FBI] investigation and evidence of Defendant's involvement in the Ponzi scheme." Thus, while Plaintiff is correct that a complaint was filed by the department against Defendant in 2007, Plaintiff has not established the other allegations (that is, either the FBI investigation or the Ponzi scheme), much less a causal nexus between these allegations and the filing of the complaint.

Defendant will not be sanctioned for its denial of these allegations.

**8**

Paragraph fifteen alleges:  "That on June 1, 2007, pursuant to 7 C.F.R. § 1.138, an administrative law judge entered a consent decision."  Am. Compl. ¶ 15.  A copy of the consent decision is attached to the amended complaint as exhibit A.  *Id*. Ex. A.  And exhibit A is referenced in paragraph fifteen.

Defendant's denying these allegations was unreasonable.  These facts are not only historical facts, but also facts expressly documented by an exhibit attached to the amended complaint.  Sanctions are appropriate.

Against this conclusion, Defendant writes that "the parties at United Producers the current Defendant, had no personal knowledge that the Consent Decision was anything other than a settlement agreement, as contained with in [sic] the Decision."  Def.'s Resp. ¶  15.

Defendant's arguments are unpersuasive.  The document is titled "Consent Decision."  Defendant's argument that it did not know that the "Consent Decision" was, in fact, a consent decision, is not reasonable.  Likewise, the decision was endorsed by Defendant's current CEO,

Dennis Bolling.  The argument that "the current Defendant . . . had no personal knowledge" that the consent decision was, in fact, a consent decision is unreasonable.

Defendant will be sanctioned for this unreasonable response.

**9**

Paragraph sixteen alleges: "That Defendant agreed to the entry of the decision[] by virtue of the signature of its President and Chief Executive Officer, Dennis Bolling."  Am. Compl. ¶ 16.  Again, the decision attached to the complaint as exhibit A is referenced in paragraph sixteen.  *Id.*

Defendant's denying this allegation was again unreasonable.  The exhibit attached to the complaint displays Mr. Bolling's signature.  The gentleman remains Defendant's CEO.  Again, sanctions are appropriate.

Against this conclusion, Defendant reiterates its argument that "the parties at United Producers the current Defendant, had no personal knowledge that the Consent Decision was anything other than a settlement agreement, as contained with in [sic] the Decision."  Def.'s Resp. ¶ 16.  For the reasons discussed above, this argument is unpersuasive.

Defendant will be sanctioned for this unreasonable response.

**10**

Paragraph seventeen alleges: "Defendant agreed to the findings that Defendant was engaged in the business of buying and selling livestock in commerce on a commission basis and was registered with the Secretary of Agriculture as a dealer and market agency under the terms of the Packers and Stockyards Act."  Am. Compl. ¶ 17.

Although it is possible that these allegations are correct, Plaintiff has not established that they are.  That is, while it is possible that Defendant agreed to these findings, the consent decision does not expressly stipulate this.  Rather, as noted, the consent decision merely provides

that "[Defendant] admits the jurisdictional allegations in paragraph I of the Complaint and specifically admits that the Secretary has jurisdiction in this matter." The complaint referenced in the consent decision, however, has not been produced. Moreover, the consent decision provides that Defendant does not agree to the findings of fact section of the consent decision, which includes the assertion that "[Defendant] was: (a) Engaged in the business of buying and selling livestock in commerce on a commission basis; (b) Registered with the Secretary of Agriculture as a dealer . . . ; and (c) Registered with the Secretary of Agriculture as a market agency."

Because Plaintiff does not offer evidence to support the contentions of paragraph seventeen of the amended complaint, sanctioning Defendant for its response is not appropriate.

Defendant will not be sanctioned for this response.

**11**

Paragraph 18 quotes the ordered clause of the consent decision. Am. Compl. ¶ 18. Defendant's answer admits this allegation. Am. Answer ¶ 18. Accordingly, it is not obvious what Plaintiff moves to sanction. In any event, sanctioning Defendant for this response is not appropriate.

Defendant will not be sanctioned for this response.

**12**

Paragraph 19 alleges: "That pursuant to 7 U.S.C. § 213(b), Defendant was assessed a civil penalty of ninety-six thousand dollars ($96,000.00)." Am. Compl. ¶ 19.

Defendant's denial of this historical fact in its answer was unreasonable. As noted, the consent decision concludes: "In accordance with section 312(b) of the Act (7 U.S.C. § 213(b)), [Defendant] is hereby assessed a civil penalty of ninety-six thousand dollars ($96,000)."

Defendant will be sanctioned for this unreasonable response.

Against this conclusion, Defendant writes that "the 'civil penalty' was merely an agreement to settle the claims for an agreed-upon amount."  Def.'s Resp. ¶ 19.

Notwithstanding how Defendant has chosen to rationalize the payment, Defendant's denial of the express terms of the consent judgment was not reasonable.

Defendant will be sanctioned for this unreasonable response.

**13**

Paragraph 30 of the complaint alleges: "That Plaintiff discovered that Defendant, through the alteration and/or fabrication of condemnation slips, were [sic] falsely informing farmers that their cattle had been condemned, when in reality Defendant was converting monies from the sale of healthy cattle to its own use."  Am. Compl. ¶ 30.  Paragraph 32, in turn, alleges: "That Plaintiff repeatedly reported this practice to Defendant, including her immediate supervisors." *Id*. ¶ 32.

While Plaintiff indisputably complained to her supervisors, the precise content of those communications is contested.  Likewise, whether "in reality Defendant was converting monies from the sale of healthy cattle to its own use" is contested.

Given these disputes, sanctioning Defendant for its response denying the allegations of paragraph thirty-two is not appropriate.

**14**

Finally, paragraph 43 alleges: "That as noted above, Plaintiff raised various concerns and questions with several members of Defendant's management."  Am. Compl. ¶ 43.

As noted, the precise content of those communications is contested.  Sanctioning Defendant for its response denying the allegations of paragraph forty-three is not appropriate.

**B**

Defendant's motion in limine seeks to prohibit Plaintiff from introducing the consent decision at trial, asserting that it is not relevant and is unfairly prejudicial.

To be admissible under the Federal Rules of Evidence, evidence must be relevant — "it must make a fact more or less probable than it would be without the evidence" and that fact must be "of consequence in determining the action." Fed. R. Evid. 401(a), (b). Relevancy, however, is a de minimus requirement — evidence is presumptively admissible if it has even the "slightest probative worth." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir.2009); *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir.2006); *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir.1992) (noting the standard is "extremely liberal").

"The court may exclude relevant evidence," Rule 403 provides, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Unfair prejudice is comprised of two different notions:

> First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence. Second, unfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force.

*Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1030 (E.D.Mich.2006) (internal citations and quotations omitted).

In this case, the consent judgment has some probative value. It provides, for example, "[Defendant], its agents and employees, directly or through any corporate or other device, shall cease and desist from creating false or misleading records in connection with [Defendant's] activities subject to the Packers and Stockyards Act." This provision could be used to establish the types of misconduct that a reasonable whistleblower should report.

-15-

The probative value of the consent decision, however, is substantially outweighed by the risk of unfair prejudice. The danger that the jury would consider it for an improper purpose — for example, that Defendant is a "bad company" or that if Defendant did something bad before then it probably did it again. *See* Fed. R. Evid. 404(b); *cf. United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994). Accordingly, the Court will prohibit Plaintiff from introducing this evidence in her case-in-chief.

Against this conclusion, Plaintiff argues that the evidence should be admissible notwithstanding its risk of unfair prejudice because "the motive or intent of the Defendant (i.e., the employer) is relevant with regards to the breach of Defendant's [whistleblower] policies." Pl.'s Resp. Br. to Def.'s Mot. in Limine 7, ECF No. 54.

Plaintiff is correct that it is theoretically possible that Defendant was motivated to terminate Plaintiff's employment because she was alleging that Defendant violated the terms of the consent decision and Defendant wished to quash this allegation. There are no facts, however, suggesting that this actually motivated Defendant's decision. Moreover, even if the Court were to assume that Plaintiff had introduced evidence that this motivated Defendant's decision, there would still be a substantial danger of unfair prejudice. The Court will prohibit Plaintiff from introducing this evidence in her case-in-chief.

This is not to suggest, however, that evidence regarding the consent decision may be admissible for some other purpose at trial. See *Lipsky v Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in

which to be properly decided.").  The Court simply concludes that Plaintiff is prohibited from introducing this evidence in her case-in-chief.

**III**

Accordingly, it is **ORDERED** that Plaintiff's motion for sanctions (ECF No. 49) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff is awarded sanctions in the amount of $3000.00. Defendant is **DIRECTED** to pay the sanctions to Plaintiff on or before **September 20, 2012.**

It is further **ORDERED** that Defendant's motion in limine (ECF No. 50) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff is prohibited from introducing the consent decision as evidence in her case-in-chief.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 6, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 6, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---