UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEATHER MILLS,

      Plaintiff,

                                         Case Number 11-13148-BC

v.                                       Honorable Thomas L. Ludington

UNITED PRODUCERS, INC.,

      Defendant.

_____ /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES AND PLAINTIFF'S
MOTION FOR LEAVE TO AMEND PROPOSED JOINT FINAL PRE-TRIAL ORDER**

This case arises from the conclusion of Plaintiff Heather Mills' employment relationship with Defendant United Producers. Trial is scheduled to begin October 9, 2012. The two questions now before the Court both concern the timeliness of requests for leave to amend court filings shortly before trial.

The first question is whether to grant Defendant leave to amend its affirmative defenses to add an "after acquired evidence" defense. As its very name suggests, the after-acquired evidence defense often arises only after the litigation has commenced. In this case, Plaintiff has been on notice that Defendant intended to assert the defense since at least June 2012. Because the amendment will not unfairly prejudice Plaintiff, leave to amend will be granted.

The second question is whether to grant Plaintiff leave to amend her submission to the proposed joint final pretrial order to add Dr. Frank Stafford. The gentleman was previously disclosed as an expert witness on damages. His report was produced to Defendant. His anticipated testimony was discussed in the final pretrial conference. And the proposed joint final

pretrial order specifically references the evidence Dr. Stafford will be called upon to present. Through clerical error, however, his name was omitted from the list of expected witnesses and his report omitted from the list of expected exhibits. Because refusing to permit an amendment under these circumstances would be manifestly unjust, leave to amend will again be granted.

## I

A fuller description of the facts of the case can be found in the Court's opinion and order granting and part and denying in part Defendant's motion for summary judgment. The facts set forth below are focused on the pending motions.

## A

Farmers deliver cattle to Defendant. It inspects the cattle and sorts them into three categories. Healthy cows are accepted. Unhealthy cows are not. Cows of questionable health are conditionally accepted. Defendant pays farmers for the healthy cows, but withholds payment for the cows of questionable health. Defendant then delivers the cows to the slaughterhouse, where a U.S. Department of Agriculture veterinarian inspects each cow. If the cow is deemed fit for human consumption, the slaughterhouse pays Defendant. If the cow is condemned, the slaughterhouse does not. Defendant, in turn, then pays the farmer for the conditionally accepted cows that have passed inspection.

Defendant, essentially, is in the business of exchanging transaction costs for opportunity costs. A livestock industry middleman, Defendant facilitates the sale of cattle for farmers. Defendant's service increases the farmers' transaction costs (they would make more if they cut out the middleman). But it reduces their opportunity costs (they can get back to farming rather than selling cows).

Plaintiff alleges that in 2009 she discovered that Defendant was increasing the farmers' transaction costs — without telling the farmers.  One of Defendant's managers, Scott Acker, was altering the condemnation slips that he received from the government inspector before giving them to Plaintiff to mail to the farmers.  When a cow that Defendant had unconditionally accepted as healthy was condemned by the U.S.D.A., Mr. Acker would white out its tag number on the condemnation slip.  In its place, he would insert the tag number of a conditionally accepted cow that had passed inspection, misrepresenting that the conditionally accepted cow had been condemned.  When Plaintiff learned of this conduct, she reported it to her supervisors.  Colloquially, she blew the whistle.  Defendant responded, Plaintiff alleges, by terminating her employment.  This case ensued.

**B**

In July 2011, Plaintiff brought suit against Defendant in this Court.  ECF No. 1.  The following month, Defendant's chief financial officer, Joseph Werstak, requested that Mr. Acker "send any information [he] had pertaining to Heather Mills['] employment" to human resources.

Mr. Acker then emailed Defendant's head of human resources, Ms. Martin, and attached a spreadsheet containing "a log of hours that had concerned me for some time."  He explained: "We were well aware of the fact that Heather had been turning in more hours to payroll than she actually worked.  I had reported this to Brad Warner and Debbie Stump.  The challenge in this matter was the fact that Heather would come in at many 'off business' hours to do her bookwork."  In his deposition, Mr. Aker was asked about the spreadsheet.  Counsel asked:

Q:  When did you create the spreadsheet?
A:  I'd have to go back and look. I don't recall for sure.
Q:  Before or after she was fired?
A:  Oh, long before.

On February 20, 2012, Plaintiff was deposed.  When she was asked whether anyone had expressed concern about the accuracy of her time cards, she asserted that no one had raised the issue with her.  Counsel for Defendant inquired:  "[Mr. Acker] never had any discussions with you about your not keeping to a regular schedule at the office?"  Pl.'s Dep. 106.  "No," Plaintiff responded, elaborating: "St. Louis was a very, I'd call it, lax facility when it comes to regular hours because they're generally — you work when you need to get work done.  I mean our sale days can run anywhere from eight hours to 14 to 16 hour days."  *Id.*

## D

After Plaintiff's deposition, Defendant "subpoenaed records from the two health clubs she admitted she used during the time she was employed."  Def.'s Br. Supp. Mot. Summ. J. 10.  On May 16, 2012, the health clubs responded.  *Id.* at 11.  "The information they provided," Defendant asserts, "proves irrefutably that during the time the Plaintiff was clocked in as 'working,' she was actually spending time clocked in at the health club."  *Id.* at 10.

In support of this conclusion, Defendant produced a summary that it compiled comparing the times Plaintiff clocked into work with the times she clocked into work out at the two health clubs.  Def.'s Mot. Ex. 3.  Defendant further produced an affidavit of Mr. Warner that asserts that if "[Defendant] had been able to prove the Plaintiff's time card fraud prior to April 29, 2012, it would have terminated her immediately."  Warner Aff. ¶ 8.

## E

In June 2012, Defendant moved for summary judgment.  Among its assertions, Defendant contended that it was entitled to partial summary judgment based on the "after-acquired evidence" defense.  This defense limits the damages available in wrongful discharge

cases "where, after termination, it is discovered that the employee has engaged in wrongdoing." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361 (1995).

Because Defendant did not include the after-acquired evidence defense in its answer, the Court concluded, Defendant was not entitled to summary judgment based on this defense. The Court further concluded that the defense had not been waived, explaining that the defense need not be pleaded at the time an answer is filed as an affirmative defense. Rather, as its very name suggests, the after-acquired evidence defense often arises only after the litigation has commenced.

**F**

On September 5, 2012, the parties submitted a proposed joint final pretrial order. Dr. Frank Stafford was not listed as one of Plaintiff's witnesses. (Dr. Stafford was, however, referenced in paragraph ten.)

A few days later, a final pretrial conference was held. At the conference, counsel for Plaintiff discussed his intent to call Dr. Frank Stafford as an expert witness on damages. Defendant voiced no objection.

**G**

On September 7, 2012, Defendant filed a motion for leave to amend its affirmative defenses to include an after-acquired evidence defense. On September 26, Plaintiff filed a motion for leave to amend the proposed joint final pre-trial order. Each is addressed in turn.

**II**

**A**

The Federal Rules of Civil Procedure provide that after a responsive pleading has been served "a party may amend its pleading only with the opposing party's written consent or the

court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P.

15(a). The Supreme Court elaborates:

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Plaintiff argues that the Court should deny

Defendant's motion for leave to amend as unfairly prejudicial and futile.

**1**

"Prejudice" in the context of Rule 15 means more than the inconvenience of having to

respond to a claim or defense. *See, e.g., Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284

(2d Cir. 2000) ("[T]he fact that one party has spent time and money preparing for trial will

usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing

amendment to pleadings."). It requires something more substantial. For example,

> Prejudice may exist if extensive additional discovery would be required, if the proceedings would be delayed significantly, or if an imminent danger exists that the moving party would seek to abuse the discovery process to force a favorable settlement. Permitting a proposed amendment also may be prejudicial if discovery already has been completed, but this concern may be alleviated if the new claim arises from a similar set of operative facts and a similar time as the existing claims.

*Bleiler v. Cristwood Contracting Co.*, 868 F. Supp. 461, 463 (D. Conn. 1994), *rev'd in part on*

*other grounds*, 72 F.3d 13 (2d Cir. 1995) (internal citation omitted) (citing *Richardson*

*Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987); *Ansam Assocs., Inc. v.*

*Cola Petroleum, Ltd*., 760 F.2d 442, 446 (2d Cir. 1985)).

In this case, discovery has already been completed.  Plaintiff, however, has been on notice that Defendant sought to assert this claim since Defendant filed its motion for summary judgment in June 2012.  Moreover, the evidence Defendant seeks to introduce — records of Plaintiff's time spent at her health clubs and with her personal trainer — are not records subject to Defendant's exclusive control.  Rather, they are equally accessible to Plaintiff, presumably without the need for subpoenas or other formal discovery.  Although permitting the amendment may cause some inconvenience to Plaintiff, it will not cause undue prejudice.  Defendant's motion is not unfairly prejudicial.

Arguing against this conclusion, Plaintiff writes that "discovery closed on May 15, 2012, without a request to amend Defendant's affirmative defenses . . . .  As the Court is aware, the proposed joint final pretrial order was due on September 4, 2012, pursuant to this Court's Scheduling Order.  The joint final pretrial conference took place on Monday, September 10, 2012. . . .  As illustrated by the above-mentioned facts, the amendment requested by the Defendant would create significant prejudice."  Pl.'s Opp'n Br. 5.  Additionally, Plaintiff asserts that for the same reasons that the amendment is unfairly prejudicial, it is futile.  *Id.* at 7.

Plaintiff is correct that leave to amend is sought shortly before trial is scheduled to begin.  This fact, however, is not sufficient to establish unfair prejudice.  If it were, Plaintiff's own motion for leave to amend would also have to be denied.

**2**

Plaintiff next asserts that the proposed amendment is futile because it is "devoid of evidentiary support."  Pl.'s Opp'n Br. 6.  Contrary to Plaintiff's contention, a genuine issue of fact exists as to whether Defendant would have in fact terminated Plaintiff's employment because of the misconduct.

To support its after-acquired evidence defense, Defendant has produced an affidavit of Mr. Brad Warner that asserts that if "[Defendant] had been able to prove the Plaintiff's time card fraud prior to April 29, 2012, it would have terminated her immediately." Warner Aff. ¶ 8. This unequivocal position is, however, in tension with the acknowledgements of Defendant's agents, such as Mr. Acker.

To elaborate, Defendant terminated Plaintiff's employment in April 2011. In July 2011, Plaintiff brought suit in this Court. The following month, Defendant's chief financial officer requested that Mr. Acker "send any information [he] had pertaining to Heather Mills['] employment" to human resources. Mr. Acker emailed Defendant's head of human resources, Ms. Martin, and attached a spreadsheet containing "a log of hours that had concerned me for some time." Mr. Acker explained in his email: "We were well aware of the fact that Heather had been turning in more hours to payroll than she actually worked. I had reported this to Brad Warner and Debbie Stump." *Id.* In his deposition, Mr. Acker testified that he had created the spreadsheet "long before" Plaintiff's employment was terminated.

Thus, remarkably, Defendant acknowledges that it was "well aware" of Plaintiff's misreporting her hours "long before" Plaintiff's employment was terminated. Indeed, Defendant acknowledges Mr. Warner himself was aware of it. Yet Defendant did not terminate Plaintiff's employment. A question of fact thus exists as to whether Defendant actually would have "immediately terminated Plaintiff's employment" based on the after-acquired evidence. Put differently, although the defense is not futile, it is by no means certain to be established.

**B**

The Federal Rules of Civil Procedure provide that a court "may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The

-8-

conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Discussing the historical development of pretrial conferences and orders, Wright and Miller report:

> Under the English common law system, pretrial procedure was limited to a complicated pleading practice. Thus, with few exceptions, no means was provided by which to test the factual basis of a party's allegations until the case actually reached trial. The first procedure even roughly comparable to the pretrial conference now provided for in Rule 16 appeared during the early part of the nineteenth century in England. In 1831, Parliament passed an act authorizing the court in an action for money or property that involved interpleader to order a third-party claimant to appear and state the nature of his claim so that the court could frame the issues. . . .

> The first significant use of the pretrial conference in the United States took place in 1929 in the Wayne County Circuit Court in Michigan, which embraces the city of Detroit. . . . As shown by statistics tabulated in the mid 1930s, the use of the pretrial conference in the Detroit area was very successful in relieving the court's case backlog

> Noting the success achieved by the pretrial conference in state-court systems, the drafters of the federal rules decided to introduce a similar procedure into federal practice.

6A Charles Alan Wright et al, *Federal Practice and Procedure* § 1521 (3d ed. 2010) (footnotes omitted).

The purpose of holding pretrial conferences is efficient case management. "Pretrial orders," sensibly enough, "are intended to further the purposes of the conference." *Id*. § 1526. As Charles E. Clark, the drafter of the federal rules explains, "A pre-trial order is an absolute necessity if the good accomplished by the conference itself is to be preserved for the further disposition of the case and in the trial itself." Charles Clark, *Objectives of Pre-Trial Procedure*, 17 Ohio St. L.J. 163, 169 (1956), *quoted in* Wright & Miller, *supra*, § 1526.

In this case, as noted, Dr. Stafford was previously disclosed as an expert witness on damages. His report was produced to Defendant. His anticipated testimony was discussed in the final pretrial conference. And the joint final pretrial order specifically references the evidence Dr. Stafford will be called upon to present. But through clerical error, his name was omitted from the list of expected witnesses and his report omitted from the list of expected exhibits. Because refusing to permit an amendment under these circumstances would be manifestly unjust, Plaintiff's motion for leave to amend will be granted.

### III

Accordingly, it is **ORDERED** that Defendant's motion for leave to amend its affirmative defenses (ECF No. 87) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion for leave to amend the joint final pretrial order (ECF No. 97) is **GRANTED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 3, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 3, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---